1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| | |
|---|---|
| TONY LEE HILL, | Case No. 1:13-cv-01275 AWI DLB PC |
| Plaintiff, | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| v. | **THIRTY-DAY DEADLINE** |
| WHITE, et al., | |
| Defendants. | |

17      Plaintiff Tony Lee Hill ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis,

18 filed this civil rights action on August 14, 2013.  Plaintiff names Captain White, Lieutenant Iraheta,

19 Sergeant Chaudoin, Appeals Coordinators J. Albert and T. Schultz, Chief of Appeals J.D. Lozano,

20 and Correctional Officers Nieto, Baker and John Doe as Defendants.

21 **A.      LEGAL STANDARD**

22      The Court is required to screen complaints brought by prisoners seeking relief against a

23 governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

24 Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

25 "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

26 monetary relief from a defendant who is immune from such relief.  28 U.S.C.

27
28

1

§ 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  Id. at 1949.  This requires the presentation of factual allegations sufficient to state a plausible claim for relief.  Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

**B.**     **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at Wasco State Prison, in Wasco, California, where the events at issue occurred.

Plaintiff states that in October 2012, he was sent to A-yard from the D-yard reception center. The next day, a female correctional officer made Plaintiff the head porter, even though he did not want the job.  Some inmates told Plaintiff that she did this because she liked him, though Plaintiff thought that was untrue.

Plaintiff alleges that on April 27, 2013, Defendant Nieto, a female correctional officer, "enticed" Plaintiff to masturbate.  Compl. 4.  He states that he masturbated for her for about 35 minutes.  Compl. 4.  Plaintiff alleges that Defendant Baker, who was working in the gun tower, saw

Defendant Nieto enticing Plaintiff, but did nothing.  Defendant Baker announced the 5:00 p.m. count time over the PA system so that Defendant Nieto could be alerted.

At the 9:00 p.m. count time, Defendant Baker did not make an announcement.  When Defendant Nieto came to Plaintiff's cell and shined her flashlight, Plaintiff was masturbating. Plaintiff had the lights off, with the window covered and was not standing at the door, as he was during the prior encounter with Defendant Nieto.  Plaintiff did not know that it was count time or that Defendant Nieto was coming.  When she saw Plaintiff, she shrieked and told other correctional officers.  She did not tell them about the prior encounter earlier that day.

At 10:00 p.m., Defendant Chaudoin came to Plaintiff's cell and handcuffed him.  He took Plaintiff to the program office based on Defendant Nieto's report.  Shortly thereafter, Plaintiff was taken to Ad-Seg.

That evening, another sergeant asked Plaintiff if he really did what he was accused of. Plaintiff told him that he was entrapped, and that Defendant Nieto had watched him prior in the day.

The next day, Defendant Chaudoin told Plaintiff that the Captain would be over to see Plaintiff in 72 hours and that he might as well take the punishment of 120 days loss of goodtime/work time credit.

A few days later, Defendant White came to Ad-Seg and read Plaintiff the charge (masturbation with exposure), and told him that he'd be going to an Ad-Seg ICC hearing.

On May 2, 2013, Plaintiff went to the Ad-Seg ICC hearing regarding his programming status. At the hearing, Chief Deputy Warden Santoro told Plaintiff that she could either take his word that he didn't do it, or give him five months in the SHU.  She said that she was dismissing the charge and that she would keep an eye on Plaintiff.  Plaintiff thanked her for dismissing the charge and he was sent back to A-yard.

About a week later, Officer Moorehead gave Plaintiff a second false Rules Violation Report related to the April 27, 2013, incident.  The report, dated April 27, 2013, included additional allegations of another sexual act.  Plaintiff states that the additional information was not in the original Rules Violation Report.

On May 20, 2013, an officer gave Plaintiff Part C of the report, dated May 18, 2013.

On May 21, 2013, Defendant White held a program review hearing.  Defendant White and two other officers told Plaintiff that Deputy Warden Santoro had not dismissed the first charge.

On May 22, 2013, Plaintiff attended his disciplinary hearing related to the RVR.  Defendant Iraheta found Plaintiff guilty and him that the Deputy Warden cannot dismiss a charge.  Defendant Iraheta took 90 days behavioral/work time credits from Plaintiff.

On July 12, 2013, Defendant Iraheta gave Plaintiff a copy of the April 27, 2013, Rules Violation Report and Part C.  He also gave Plaintiff a second copy of the documents, "to cover for C.O. Moorehead giving Plaintiff the second Rules Violation Report that he wasn't authorized to give Plaintiff."  Compl. 8.

On August 4, 2013, C.O. Moorehead intentionally blocked Plaintiff's way into chow hall.  Another officer told Moorehead to move, and he did.

Plaintiff's appeal was denied at the third level because Defendants Albert and Schultz bypassed the first level.  Plaintiff contends that Defendant Lozano denied the appeal at the third level for a "substandard" reason.  Compl. 17.

Plaintiff states that he has contacted the F.B.I. and has requested an internal investigation by Wasco State Prison.

 Based on these facts, Plaintiff alleges that he was entrapped by Defendants.  He further believes that the Deputy Warden Santoro dismissed the charges, but Defendants' abuse of power led to an illegal disposition of a charge that had been dismissed.  Plaintiff alleges that Defendants acted contrary to their own regulations.   Specifically, he cites the Employee Sexual Misconduct regulation (15 Cal. Code Regs. § 3401.5(a)(1)).  Plaintiff states that this section was the motive behind Defendants' entrapment and creation of false reports.  He also contends that Defendants, because of racism, were being untruthful with Deputy Warden Santoro's statements.

Plaintiff contends that the refusal to dismiss the false charge that has been dismissed by Santoro violates the regulations governing disciplinary actions.  He also alleges violations of his Fifth and Fourteenth Amendment right to due process, and a violation of the Eighth Amendment.

C.    **ANALYSIS**

     1.    Violation of Due Process

     As an initial matter, Plaintiff alleges a violation of both the Fifth and Fourteenth Amendments.  However, "the Fifth Amendment's due process clause applies only to the federal government."  Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008).  Plaintiff's claim is therefore governed by the Fourteenth Amendment.

     The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law.  Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005).  To state a claim, Plaintiff must first identify the interest at stake.  Wilkinson, 545 U.S. at 221.  Liberty interests may arise from the Due Process Clause itself or from state law.  Id.  The Due Process Clause does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue.  Id. at 221-23 (citing Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995)) (quotation marks omitted).  Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.  Id. at 221(citing Sandin, 515 U.S. at 484) (quotation marks omitted); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

     In his complaint, Plaintiff cites the above legal standard, though he does not identify the interest at stake.  Insofar as Plaintiff contends that he has a liberty interest in remaining free of administrative segregation, the Due Process Clause does not create such an interest.  Toussaint v. McCarthy, 801 F.2d 1080, 1091 (9th Cir.1985), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).  Administrative segregation is the type of confinement that should be reasonably anticipated by inmates at some point in their incarceration.  Toussaint, 801 F.2d at 1091 (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).  The Ninth Circuit has concluded that prisoners have no liberty interest in remaining free from administrative segregation or solitary confinement.  See May v. Baldwin, 109 F.3d 557, 565 (9th Cir.1997).  Plaintiff has not alleged facts

to establish that the conditions he was subjected to while confined in administrative segregation imposed atypical and significant hardship on him in relation to the ordinary incidents of prison life. Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996).

Insofar as he claims a liberty interest in remaining free of allegedly false Rules Violation Reports, there is no such interest.  The Due Process Clause itself does not contain any language that grants a broad right to be free from false accusations, but guarantees certain procedural protections to defend against false accusations.  Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir.1986). However, "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

Therefore, Plaintiff's suggestions of entrapment and false Rules Violation Reports do not support a due process claim against any Defendant.

2.    Eighth Amendment

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.  Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in

prison represents a constitutional violation, <u>Morgan</u>, 465 F.3d at 1045 (quotation marks omitted).  To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety.  E.g., <u>Farmer</u>, 511 U.S. at 847; <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150-51 (9th Cir. 2010); <u>Foster v. Runnels</u>, 554 F.3d 807, 812-14 (9th Cir. 2009); <u>Morgan</u>, 465 F.3d at 1045; <u>Johnson</u>, 217 F.3d at 731; <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998).

Here, although Plaintiff alleges a violation of the Eighth Amendment, he provides no facts that would support an Eighth Amendment violation.  That Plaintiff alleges he was entrapped, received a false Rules Violation Report and ultimately lost good time/work time credits does not support an Eighth Amendment claim.  Plaintiff has not alleged facts to show that any Defendants were deliberately indifferent to his health or safety and he therefore fails to state an Eighth Amendment claim.

3.     <u>Administrative Appeals</u>

Generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation.  <u>George v. Smith</u>, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted).  However, because prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, <u>Jett v. Penner</u>, 439 F.3d 1091, 1098 (9th Cir. 2006), there may be limited circumstances in which those involved in reviewing an inmate appeal can be held liable under section 1983.  That circumstance has not been presented here.

As there is no underlying violation for the reasons discussed above, Plaintiff cannot state a claim based on Defendants' review of his appeals.

Moreover, to the extent Plaintiff suggests that Defendants Schultz and Albert improperly bypassed a level, and that Defendant Lozano gave a "substandard" reason for rejecting the appeal at the third level, Plaintiff does not a have protected liberty interest in the processing his appeals.  Therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals.  <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003) (citing <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988)).

Plaintiff therefore fails to state a claim against Defendants Schultz, Albert and Lozano for their role in reviewing Plaintiff's appeal.

### 4.   California Code of Regulations, Title 15

Plaintiff alleges that Defendants violated various sections of Title 15 of the California Code of Regulations.  However, the Court is unaware of any authority for the proposition that there exists a private right of action available to Plaintiff for violation of Title 15 regulations, and there exist ample district court decisions holding to the contrary.  See e.g., Vasquez v. Tate, 2012 WL 6738167, at *9 (E.D. Cal. 2012); Davis v. Powell, 901 F.Supp.2d 1196, 1211 (S.D. Cal.2012).

Plaintiff is therefore unable to state a claim under Title 15.

### 5.   Defendant John Doe

As noted above, Plaintiff must link each individual Defendant to an alleged violation.  Here, although Plaintiff names a John Doe in the complaint, he does not clearly indicate how John Doe was involved in the facts underlying this action.

## D.   **CONCLUSION AND ORDER**

Plaintiff's complaint fails to state a claim upon which relief may be granted under section 1983.  The Court will provide Plaintiff with the opportunity to file an amended complaint, **but he should only amend if he believes, in good faith, that he can do so.**  Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George, 507 F.3d at 607.

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 676-77.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ."  Twombly, 550 U.S. at 555 (citations omitted). Finally, an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

1    Accordingly, it is HEREBY ORDERED that:

2    1.    Plaintiff's complaint is dismissed, with leave to amend, for failure to state a claim

3 under section 1983;

4    2.    The Clerk's Office shall send Plaintiff a civil rights complaint form;

5    3.    Within thirty (30) days from the date of service of this order, Plaintiff shall file an

6 amended complaint; and

7    4.    If Plaintiff fails to file an amended complaint in compliance with this order, this

8 action will be dismissed, with prejudice, for failure to state a claim under section 1983.

9

10 IT IS SO ORDERED.

11    Dated:   **February 21, 2014**            /s/ *Dennis L. Beck*

12                              UNITED STATES MAGISTRATE JUDGE

9